# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| TERESE DENTON, | ) CASE NO. 1:16-cv-00134-DAP |
| | ) |
| Plaintiff, | ) JUDGE DAN AARON POLSTER |
| | ) |
| vs. | ) **<u>OPINION AND ORDER</u>** |
| | ) |
| SAFEGUARD PROPERTIES, LLC, | ) |
| | ) |
| Defendant. | ) |

Plaintiff Terese Denton ("Denton") has filed this state and federal law age discrimination case against her former employer, Safeguard Properties, LLC ("Safeguard"), following her termination less than seven months after she was hired. This case is before the Court upon two motions: Motion of Defendant Safeguard Properties, LLC for Summary Judgment ("Motion for Summary Judgment"), Doc #: 27, and Plaintiff's Motion to Strike or, Alternatively, Objections to Portions of Defendant's Memorandum in Support of Summary Judgment and Supporting Declaration ("Motion to Strike"), Doc #: 35. For the following reasons, the Court denies the Motion to Strike and Grants the Motion for Summary Judgment.

**I. Procedural Background**

Denton filed a charge of discrimination with the U.S. Equal Employment Opportunity

Commission ("EEOC") in July 2015. Compl. ¶ 28, Doc #: 1-1; Mot. Summ. J. 8. On September 21, 2015, the EEOC issued Denton a Notice of Right to Sue. Compl. 9.

On December 21, 2015, Denton filed a Complaint in Cuyahoga County Court of Common Pleas. On January 20, 2016, Safeguard filed Notice of Removal to this Court. Doc #: 1.

After discovery had closed, the parties attempted to settle the case, which included a settlement conference on February 22, 2017. Discovery was subsequently reopened and the dispositive deadline extended. *See* Mot. Extension, Doc #: 24.

On June 19, 2017, Safeguard filed the instant Motion for Summary Judgment. Doc #: 27. Denton filed an Opposition on July 28. Doc #: 29. On July 30, Denton also filed the instant Motion to Strike. Doc #: 35. Safeguard replied to Denton's Opposition and filed an Opposition to Denton's Motion to Strike on August 21. Doc ##: 39, 41.

**II. Motion to Strike**

Federal Rule 56(c)(2) allows a party to object to the admissibility of evidence presented in support or opposition of a motion for summary judgment. The Committee Notes explain:

> Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. The objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated. There is no need to make a separate motion to strike. If the case goes to trial, failure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial.

Fed. R. Civ. P. 56 advisory committee's note to 2010 amendments. Accordingly, the Court will construe "Plaintiff's Motion to Strike Or, Alternatively, Objections . . ." simply as objections.

Denton makes three objections. Mot. Strike 1–2. The first objection ("Unsupported Claim That Denton Wanted 'Credit' For Non-Starts.") and third objection ("Unsupported Claim That the Same Decision-Makers Hired and Fired Denton.") address *arguments* in Safeguard's memorandum rather than *evidence* in the record. Thus, objections as to the *admissibility* of these statements are not well taken.[1]

The second objection ("Unsupported Claim that a Younger, Promoted Employee's Performance Improved.") argues one paragraph from the Declaration of Jennifer Anspach is factually unsupported:

> On January 19, 2014, while she [Maria Soto] was in the role of Vendor Trainer, Safeguard placed Soto on a performance improvement plan (PIP) due to failure to satisfy Safeguard's objective productivity standard. (*See* Soto PIP attached hereto as Exhibit D). By February 24, 2014, Soto consistently was achieving the productivity standard for the position of Vendor Trainer and therefore had satisfied the terms of her PIP. (*See* Soto PIP Final Follow-Up Memorandum, attached as Exhibit E).

Anspach Decl. ¶ 15, Doc #: 27-5. Denton argues that the attached documents do not, in fact, support Ms. Anspach's conclusions about improvement in Soto's performance. However, importantly, Ms. Anspach opens her Declaration by saying, "I have personal knowledge of the matters stated herein," and "I have obtained intimate knowledge of the facts and circumstances surrounding Safeguard's employment of Plaintiff Terese Denton and the other employees referenced herein." *Id.* ¶¶ 1–2. Because Ms. Anspach's lay testimony is based on her personal knowledge, whether her statements are supported by, consistent with, or in conflict with any referenced documents is a matter of credibility, not admissibility.

---

[1] Of course, the Court basis its evaluation of the Motion for Summary Judgment on the actual evidence in the record, not any party's characterization—accurate or otherwise—of that evidence.

Accordingly, Denton's Motion to Strike, Doc #: 35, is denied.

**III. Motion for Summary Judgment**

**A. Legal Standard**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Rule 56(c) mandates summary judgment against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322. The non-moving party may not rely on subjective beliefs or opinion, and a plaintiff must do more than simply show that some doubt exists as to the facts. *Arendale v. City of Memphis*, 519 F.3d 587, 601 (6th Cir. 2008); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"On the other hand, if a reasonable jury could return a verdict for the nonmoving party, summary judgment for the moving party is inappropriate." *Baynes v. Cleland*, 799 F.3d 600, 606 (6th Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The movant bears the initial burden of showing that there is no material issue in dispute. *Id*. at 607 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "A fact is deemed material only if it might affect the outcome of the lawsuit under the governing substantive law." *Id*. (citing *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994)). In reviewing a motion for summary judgment, the court must view the facts and any inferences reasonably drawn from them in the light most favorable to the nonmoving party. *Id*. (citing *Kalamazoo Acquisitions, LLC v. Westfield Ins. Co*.,

395 F.3d 338, 342 (6th Cir. 2005)).

### B. Facts

Safeguard provides property preservation services, working with subcontractors to provide "superintendence, preservation, and maintenance functions." Employee Handbook 1, Doc #: 27-1.

#### 1. Denton's Employment

Denton was hired by Safeguard as a "vendor recruiter," beginning January 26, 2015. Denton Dep. 67–68, 93–94, 141; *see* Acknowledgment, Denton Dep. Ex. 3; *see also* Confidentiality Agreement, Denton Dep. Ex. 6. Safeguard ultimately fired Denton on August 10, 2015. Denton Dep. 229. During her employment with Safeguard, Denton was forty-six years old. *See* Denton Dep. 6.

The record does not make clear who made the decision to hire Denton. However, Denton was interviewed by Steve Buzash and Palmer DePetro, and she initially reported to Buzash (who in turn reported to DePetro). Denton Dep. 66–67, 72–73, 82; DePetro Dep. 33–34. After Buzash's employment with Safeguard ended, Denton reported directly to DePetro for a time. DePetro Dep. 33–34; Denton Dep. 79–82. In June 2015, Thomas Marando became Denton's direct supervisor. Marando Dep. 7; Denton Dep. 79–82; DePetro Dep. 9.

When Denton began employment, she and the other vendor recruiters were evaluated based on the number of qualified vendor "starts" per month. Denton Dep. 142; *cf.* Marando Dep. 18 (describing a starts per week metric). However, in or about May or June 2015, possibly shortly after Marando took over as supervisor, the vendor recruiters were shifted to a starts per hour standard. Marando Dep. 18, 21, 24–25; DePetro Dep. 36–37; Denton Dep. 142–143. This

starts per hour target was 0.25 and was scheduled to increase over time, specifically to 0.35 as of June 28, 0.45 as of August 2, and 0.50 as of August 30. Denton Dep. 207–08, 255–56; Marando Dep. 22; PIP Mem., Denton Dep. Ex. 10. However, during the relevant time periods, the target was never increased beyond 0.35. Marando Dep. 38–39, 63–65.

As of June 16, 2015, Denton had met the starts per hour standard (at that time, 0.25) during only three of the seven preceding weeks. Denton Dep. 203–04; PIP Mem., Denton Dep. Ex. 10. On June 17, Denton met with DePetro and Marando and was put on a performance improvement plan ("PIP"). Denton Dep. 202–03; PIP Mem., Denton Dep. Ex. 10. The PIP outlined what Denton was expected to do during the next fourteen days: "100% improvement in previous two-week time frame numbers," schedule five one-hour times to observe fellow recruiters, correct and update her records in the Archer computer system, and meet starts per hour standards as the targets increased over the coming weeks and months; the PIP also listed suggested courses for her to take. PIP Mem., Denton Dep. Ex. 10; Denton Dep. 189–190.

About a month later, on July 13, 2015, Denton again met with DePetro and Marando for a follow-up. PIP Follow-up Mem., Denton Dep. Ex. 11; Denton Dep. 209; *see* Marando Dep. 60–61 (noting "June" date on the memo is a typo). The Follow-up PIP Memo indicates Denton had not met her target consistently. The Follow-up PIP Memo also describes Denton's failure to sign up or to take courses, failure to complete five hours of training, taking of unauthorized overtime, and several procedural violations.

On July 27, 2015, DePetro extended Denton's PIP for two weeks. Denton Dep. 227; Email Chain, Denton Dep. Ex 12. Denton admits that she did not consistently meet her targets or satisfy the requirements during this time. Denton Dep. 229–30. On August 10, 2015, at the third

and final follow-up at end of the extended PIP period, DePetro terminated Denton's employment. PIP Final Follow-up Mem., Denton Dep. Ex. 13; DePetro Dep. 32; Denton Dep. 230.

### 2. Other Employees

Maria Soto, age 28, was hired as a "new contract coordinator" on July 23, 2012, and was a vendor trainer from January 1, 2013, to June 7, 2015. Anspach Decl. ¶ 14. Denton claims (and there appears to be no contrary evidence) that Soto, the "vendor trainer," reported to the same supervisors, worked similar hours, was in the same department and workspace, performed the same job functions, and was subject to the same starts per hour target as Denton, a "vendor recruiter." Denton Decl. ¶ 4. On January 19, 2014, while a vendor trainer, Soto was placed on a PIP by Buzash for failure to achieve twelve starts per week, the target at the time. Anspach Decl. ¶ 15; Soto PIP Memo., Anspach Decl. Ex. 5-D. The final follow-up indicates "we are at 47 unadjusted starts her adjusted goal with 11.75 hours of PTO was 44.50 making this pip successful." Soto Final PIP Memo., Anspach Decl. Ex. 5-E; *see* Anspach Decl. ¶ 15.

Soto was promoted to "expert vendor recruiter" on June 2, 2015, effective June 8. Anspach Decl. ¶ 14; DePetro Dep. 50–51. Expert recruiters were not hourly employees and were evaluated based on weekly, as opposed to hourly, targets—different than the requirements for vendor recruiters. Marando Dep. 9, 18; Denton Dep. 149–151 (discussing the different expectations for the "recruiter specialist" position, which is how Denton describes the position Soto was promoted into); DePetro Dep. 16; *see* Denton Decl. ¶ 3 (explaining that "recruiter specialists" and "expert vendor recruiters" refer to the same thing). During the weeks ending May 10 through June 7, when Soto was a vendor trainer, she hit the vendor recruiter starts per hour target two of five weeks. Employee Performance Chart, Denton Decl. Ex. 1. During the

weeks ending June 14 through July 26, while an expert recruiter, Soto hit the vendor recruiter starts per hour target two of seven weeks. Employee Performance Chart, Denton Decl. Ex. 1.

James Hill, age 30, was hired as a "client account representative" on April 11, 2013, later changed to "recruiter/qualifier," and finally assumed the role of "lead generator" on or about July 27, 2015. Anspach Decl. ¶ 13. According to Vice President of Human Capital Jennifer Anspach, Hill had also previously been on a PIP and during the Spring and Summer of 2015 was performing similarly to Denton. Anspach Dep. 40.

The Employee Performance Chart indicates Hill hit the vendor recruiter starts per hour target one week between May 10 and July 19. As was Denton, Hill was placed on a PIP on or about June 17 for failure to achieve target starts per hour. Hill PIP Memo, Pl's. Dep. Ex. 12; Marando Dep. 81. Hill's final PIP follow-up meeting did not occur, however, because he was shifted to a "lead generator" role. Marando Dep. 82. Hill ultimately voluntarily resigned in February 2016. Hill Two Weeks' Notice Email, Pl's. Dep. Ex. 12.

Erika Harper, age 34, was hired as an expert vendor recuiter on April 6, 2015. Anspach Decl. ¶ 11. During the weeks ending May 10 through July 26, Harper hit the vendor recruiter starts per hour target four times. Employee Performance Chart, Denton Decl. Ex. 1.

After Denton's termination on August 10, 2015, several vendor recruiters were hired in short order. On August 10, DePetro hired Jennifer Bugaj, age 35, who had been working for Safeguard as a temporary employee, as a regular vendor recruiter. DePetro Dep. 19–22; Employee List, DePetro Dep. Ex. 14. On August 17, DePetro hired Melina Aguilo, age 35, who was referred by another employee, as a vendor recruiter. DePetro Dep. 18–19; Employee List, DePetro Dep. Ex. 14. On September 14, Safeguard hired Clare Wellot, age 24, although that

hiring decision was made after DePetro had left the company. DePetro Dep. 20–21; Employee List, DePetro Dep. Ex. 14.

DePetro left Safeguard around Labor Day 2015 (September 7, 2015). DePedro Dep. 6–7.

**C. Discussion**

The Court first addresses Denton's discrimination claims, and second her retaliation claim.

### 1. Age Discrimination

#### a. Law

Plaintiff brings her age discrimination claims under both state and federal law. Age discrimination claims brought under Ohio law are generally analyzed under the same framework as claims raised under the federal Age Discrimination in Employment act ("ADEA"). *Minadeo v. ICI Paints*, 398 F.3d 751, 763 (6th Cir. 2005).

"The ADEA prohibits an employer from discharging an employee 'because of such individual's age.'" *Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 723 (6th Cir. 2012) (quoting *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 264 (6th Cir. 2010), in turn quoting 29 U.S.C. § 623(a)(1)). To survive a motion for summary judgment on an age discrimination claim, a plaintiff must present either direct or circumstantial evidence of discrimination. *Geiger v. Tower Automotive*, 579 F.3d 614, 620–21 (6th Cir. 2009). Direct evidence is reflected by "conduct or statements by persons involved in making employment decisions directly manifesting a discriminatory attitude . . . ." *Scott v. Potter*, 182 Fed. App'x 521, 525–26 (6th Cir. 2006).

When there is no direct evidence of discrimination, an age discrimination claim is

analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Lefevers*, 667 F.3d at 725. A plaintiff may make a prima facie case of age discrimination under *McDonnell Douglas* if she can show (1) she was in the protected age group, (2) she was discharged, (3) at the time of her discharge, she was performing her job at a level that met her employer's legitimate expectations,[2] and (4) she was replaced by someone of comparable qualifications but substantially younger. *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 310–13 (1996) (modifying the *McDonnell Douglas* framework for an ADEA case).

Once the plaintiff has met this burden, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for taking the adverse employment action. *Id*. at 311 (inner quotation omitted). Defendant need not prove that its articulated reason is reasonable or justified. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–09 (1993). Once the defendant meets this burden, the plaintiff must demonstrate that the proffered nondiscriminatory reason was a pretext for unlawful discrimination. *Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 590 (6th Cir. 2014) (citing *Geiger*, 579 F.3d at 626). A plaintiff can provide sufficient evidence of a pretext for unlawful discrimination by showing that the stated reason (1) had no basis in fact, (2) did not actually motivate the challenged conduct, or (3) was insufficient to warrant the challenged conduct. *Id.* (citing *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003)).

---

[2]A plaintiff can satisfy the qualification prong by showing that she performed at a level that generally met her employer's objective minimum qualifications. *Loyd*, 766 F.3d at 590. Moreover, district courts should not consider the employer's articulated reason when analyzing the prima facie case. *Id*. E.g., an employee who worked at a company for 25 years should not be considered unqualified for the position because of a one-time event.

### b. Application

Denton concedes there is no direct evidence of dscimination. Opp'n 10 ("Here, there admittedly is no direct evidence of age discrimination . . . ."). Accordingly, Denton's state and federal age discrimination claims are analyzed under the burden-shifting framework set forth in *McDonnell Douglas*.

### i. Prima Facie Case

In its Motion for Summary Judgment, Safeguard does not argue that Denton has failed to establish her prima facie case, and the Court concludes that a reasonable jury could find Denton has established each element of a prima facie case of age discrimination. It is undisputed that Denton was over forty years old. It is also undisputed that Denton suffered an adverse employment action (i.e., was fired by Safeguard). It is further undisputed that, shortly following Denton's termination as a vendor recruiter, Safeguard hired several under-forty individuals as vendor recruiters. A reasonable jury could also find that Denton was, generally, qualified for her position, as she had only recently been hired and had at least some success on the job.

Therefore, the burden shifts to Safeguard to set forth a legitimate, nondiscriminatory reason for terminating Denton.

### ii. Legitimate, Nondiscriminatoty Reason

Safeguard contends that it has presented a legitimate, nondiscriminatory reason for terminating Denton's employment that she cannot rebut is a pretext for discrimination. Specifically, Safeguard states that it terminated Denton for her failure to keep up with production standards after notice and an opportunity to improve.

The failure to meet an employer's reasonable performance expectations is a legitimate,

nondiscriminatory reason for charging an employee. *See, e.g., Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1116 (6th Cir. 2001); *Gagne v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309, 313 (6th Cir. 1989); *Heck v. Bd. of Trustees, Kenyon Coll.*, 12 F.Supp.2d 728, 740 (S.D. Ohio 1998). Here, Denton does not dispute that Safeguard has properly asserted a legitimate, non-discriminatory reason for Denton's termination, but does argue that she has sufficient evidence that a jury might find the asserted reason to be pretextual. Opp'n 11.

### iii. Pretext

Denton argues that a jury could reject Safeguard's asserted reason because similarly situated employees received disparate treatment and because the employees hired after Denton was fired were not held to the starts per hour standards. These comparables, however, are insufficiently similar.

"It is fundamental that to make a comparison . . . the plaintiff must show that the 'comparables' are similarly-situated in *all respects*. Thus, to be deemed 'similarly-situated', the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

The three coworkers Denton identifies as similarly-situated-but-younger are Soto, Hill, and Harper. Opp'n 4-8. While the record demonstrates these employees were younger, did not consistently achieve vendor recruiter stat per hour targets, and were not fired, they each differ from Denton in one or more material ways.

First, during the relevant times, Soto was a "vendor trainer" and then an "expert recruiter," Hill was a "recruiter/qualifier," and Harper was an "expert recruiter." Denton, of course, was a "vendor recruiter." A mere difference in title is likely immaterial. Denton claims, with regard to the "vendor trainer" role,

> Maria Soto worked with me during my tenure at Safeguard with out [sic] group of "Vendor Recruiters." I have seen a statement from Safeguard in this litigation referring to Soto as a "Vendor Trainer" as opposed to a fellow "Vendor Recruiter." While I worked with Soto, we reported to the same supervisors, worked the general same hours, operated out of the same department and workspace, performed the same job functions, and we were subject to the same production SPH standards, at least until late July 2015.

Denton Decl. ¶ 4. While Denton asserts personal knowledge of what she saw, she provides no basis for how after less than seven months at Safeguard she had acquired detailed knowledge of another position's job functions and production standards. Furthermore, intuitively, "recruiter" and "trainer" are different functions. However, as Safeguard provides no evidence to the contrary, Denton's assertions regarding the vendor trainer role stands for the purpose of this Motion for Summary Judgment.

Denton makes a similar assertion regarding the expert vendor recruiter role. Denton Decl. ¶ 5. However, it is clear from the record that expert recruiters had different performance expectations and were subject to different evaluation metrics; they were not expected to satisfy the production standards that vendor recruiters were. In fact, Denton, in her deposition, discussed how the expectations for expert recruiters were different than vendor recruiters. Denton Dep. 149–151. Denton cannot now create a dispute of fact in a declaration at odds with her own earlier deposition. *See Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986) ("A party may not create a factual issue by filing an affidavit, after a motion for summary judgment has

been made, which contradicts her earlier deposition testimony."). Given the arguments in this case, a difference in role expectations and evaluation standards is more than merely titular and is highly material. Thus, not firing expert recruiters Soto and Harper for failure to meet vendor recruiter targets does not support the conclusion that the application of performance metrics to Denton was age-motivated pretext.

Second, Soto and Hill had significantly longer tenure with Safeguard (three and two years, respectively) than Denton had (under seven months) at the time of Denton's termination and both had served Safeguard in more than one capacity. *Tribble v. Cincinnati Bell Tel.*, No. 1:09-CV-568, 2011 WL 3627402, at *11 (S.D. Ohio May 4, 2011) (noting differences in experience can be used to determine whether two employees are similarly situated), *report and recommendation adopted*, No. C-1-09-568, 2011 WL 3627284 (S.D. Ohio Aug. 17, 2011). Employees with longer and broader work history are materially different, insofar as a company may have invested in such employees over time and such employees may have greater, useful institutional knowledge and experience, and disparate treatment consequently does not demonstrate age discrimination. Bluntly, experienced employees are more valuable than new hires.

Finally, vendor recruiters younger than Denton were also placed on PIPs for failure to satisfy performance standards. *See* Anspach Dec. ¶ 16-17.

The attempted comparison with employees hired immediately after Denton was fired is even less relevant. Certainly, such younger hires may support a prima facie case of discrimination. However, whether these hires achieved or failed to achieve Denton's performance targets during an entirely different time period while answering to a different

-14-

manager and how they may have been consequently disciplined or otherwise managed are irrelevant considerations.

In sum, there is no evidence that performance targets were only imposed against older employees, and overall no evidence from which a jury could conclude that Safeguard's claimed reason for firing Denton was pretextual.

Accordingly, Denton's claims of discrimination are dismissed.

### 2. Retaliation

#### a. Law

Denton brings her retaliation claims under Ohio law only.

As with discrimination, discussed above, Ohio law uses the *McDonnell Douglas* burden shifting framework when evaluating claims of retaliation. *Carney v. Cleveland Hts.-Univ. Hts. City Sch. Dist.*, 758 N.E.2d 234, 244 (Ohio Ct. App. 2001). The first step in this analysis is whether plaintiff has established a prima facie case of retaliation. *Id.*

To establish a prima facie case of retaliation pursuant to Ohio Rev. Code Ann. § 4112.02, the plaintiff must prove, "(1) she engaged in a protected activity, (2) the defending party was aware that the claimant had engaged in that activity, (3) the defending party took an adverse employment action against the employee, and (4) there is a causal connection between the protected activity and adverse action." *Greer-Burger v. Temesi*, 879 N.E.2d 174, 180 (Ohio 2007) (citing *Canitia v. Yellow Freight Sys.*, 903 F.2d 1064 at 1066 (6th Cir. 1990)).

To satisfy the element of causation, the plaintiff must "produce evidence from which an inference can be drawn that the adverse action would not have been taken in the absence of the protected conduct." *Hilbert v. Ohio DOT*, 2017-Ohio-488 ¶ 42 (citing *Nguyen v. Cleveland*, 229

F.3d 559, 563 (6th Cir.2000)). A plaintiff need not "conclusively establish the causation element of his claim," but is "only required to produce evidence demonstrating that [her employers] took adverse employment action against [her] because of [her] participation in the protected activity." *Wholf v. Tremco Inc.*, 26 N.E.3d 902, 913 (Ohio Ct. App. 2015). "Proximity in time between the protected activity and the adverse employment action may constitute evidence of a causal connection." *Hilbert* at ¶ 43 (citing *Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir.2007)). For example, "a plaintiff satisfied the low threshold of proof necessary to establish a prima facie case of retaliatory discharge where the employee was terminated within three weeks of returning from FMLA leave and two months after first notifying the employer of the need for leave. *Hilbert* at ¶ 42 (quoting *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 283 (6th Cir.2012)).

If the plaintiff establishes a prima facie case of retaliation, the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employer's action. *Carney*, 758 N.E.2d at 245 (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–253 (1981)).

If the employer is able to articulate some legitimate nondiscriminatory reason for the adverse action, "the burden then shifts back to the employee to prove that the proffered nondiscriminatory reasons by the employer are a pretext. *Carney*, 758 N.E.2d at 429 (citing *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 143 (2000)).

**b. Application**

To begin, the Court addresses whether the Denton has made out a prima facie case of retaliation. First, the Court addresses whether the Denton engaged in a protected activity and whether her employer was aware of it. These elements are not disputed: Denton filed a

-16-

complaint with the EEOC in July 2015, and Safeguard was aware she had done so. Mot. Summ. J. 8; Opp'n 16; Anspach Dep. 11; DePetro Dep. 13.

Second, the Court addresses whether Safeguard took an adverse employment action against Denton. Again, this element is not in dispute: Denton was terminated on August 10, 2015. Mot. Summ. J. 9, Opp'n 4. Around (or less than) a month passed between Denton's filing of the EEOC charge and her termination.

Third, the Court address the matter of causation, which is a matter of some dispute. Safeguard argues that because the PIP was issued before Denton engaged in her protected activity, causation is precluded. Mot. Summ. J. 17 ("[W]hen the adverse employment action was planned prior to the plaintiff's protected activity, it will not suffice to establish the required causal connection."). This argument is not without force. *See Reynolds v. Extendicare Health Servs., Inc.*, 257 F. App'x 914, 919–20 (6th Cir. 2007); *see also Reynolds v. Fed. Exp. Corp.*, No. 09-2692-STA-CGC, 2012 WL 2089952, at *3 (W.D. Tenn. June 8, 2012); *see also Baker v. Medtronic, Inc.*, No. 1:07 CV 00286, 2009 WL 948800, at *9 (S.D. Ohio Apr. 2, 2009) (ruling that because the terms of the PIP explicitly warned of termination if plaintiff failed to meet its conditions, causation was not established.). However, this reasoning is factually inapplicable here, where the evidence clearly establishes that Safeguard had not planned to fire Denton at the time the PIP was put in place. Marando Dep. 26-27 ("[T]he intention of putting someone on a performance improvement plan is not to terminate. That is purely based on the performance throughout the performance improvement plan."); *see* DePetro Dep. 10–11. Thus, while a jury may find absence of causation on the basis of timing, the Court cannot say, as a matter of law, that the timing of Denton's EEOC filing precludes causation.

Rather, the Court concludes, based on the *Hilbert* proximity rule and the evidence of Safeguard's intention not to fire prior to the protected activity, that a reasonably jury may conclude that Denton has established a causal link between the protected activity and the adverse action.

Plaintiff has thus successfully established all elements of a prima facie case of retaliation.

However, for the same reasons discussed with relation to age discrimination, above (*see*, *supra*, Sections III.C.1.b.ii–iii), the Court finds that Safeguard has properly demonstrated a legitimate, non-discriminatory reason for Denton's termination and that Denton cannot demonstrate that Safeguard's purported reason is pretextual. Therefore, Denton's retaliation claim must also be dismissed.

## IV. Conclusion

For the reasons stated above, Motion to Strike, Doc #: 35, is DENIED, and Motion for Summary Judgment, Doc #: 27, is GRANTED.

> */s/ Dan A. Polster    Sept. 9, 2017*
> **DAN AARON POLSTER**
> **UNITED STATE DISTRICT JUDGE**